Peueger, J.
Heard on petition and motion of Jobn E. Madden, filed August 29, 1906, for a modification of the decree entered February 7, 1906.
When originally tried this case was one for alimony. Mrs. Madden, in an amended petition, sought to recover for maintenance as well as for an allowance, claiming that she assisted her husband in the accumulation of his fortune. This fact was denied- by the defendant. Upon the issues thus joined, another member of this court found that an agreement entered into be *594 tween the parties paying $250 a month to the plaintiff, was not for permanent but for temporary alimony. Pie found that the defendant had accumulated a very valuable breeding farm in Kentucky, and that he owned many horses; but without determining their value found.that these assets were underestimated by the defendant’s witnesses and exaggerated by those’ of the other side. The court also found that Mrs. Madden was a faithful and capable wife, and that during all their married life she had been a great aid to her husband in his business, and that much of the labor and responsibility of such business devolved upon her. Upon his aggression the court allowed her, instead of a sum in gross, $3,000 a year, payable $250 a month.
To this decree making this award was added the following clause:
“And this decree is without prejudice to the right of the plaintiff or defendant in the event of a change of cireilmstances, either by death of the defendant, or in event, of divorce and remarriage of the plaintiff, or from any other cause, to apply to this court for-a modification or termination hereof.”
The monthly,payments were secured by mortgage upon the fann in Kentucky, and were paid to the plaintiff for some time. After this decree was entered, by a separate action the plaintiff brought proceedings for divorce in this court, service was had by publication, and the decree entered in her favor. Shortly thereafter plaintiff married Louis V. Bell and is now absent in some foreign country. This state of facts coming to defendant’s knowledge, he declined to make any further payments, and filed in this case a petition and motion asking that the order be modified, cutting off the entire award. To this the plaintiff, through her counsel in the divorce case, objected, and insisted that the adjudication-heretofore made was inadequate and demanded an increase. As these issues involved the scope and conelusiveness of the court’s prior judgment, the present trial judge, apprehending the difficulty of a review of the evidence, conforming to the findings of the former trial judge, accepted the burden only at the request of the latter, who declined to hear this petition, for reasons that he upon consideration deemed sufficient.
*595 At the outset of the hearing the introduction of evidence as to the financial condition of the defendant and the aid of the plaintiff in the accumulation of defendant’s property, as the basis of a finding and judgment of the former trial judge, was objected to, on the ground that his decision was final, and consequently, that inasmuch as the monthly allowance was purely maintenance and a denial of her right to share in the property of her husband, such allowance, in accordance with the condition attached to the same in the decree, should be entirely cut off.
' Plaintiff’s counsel insisted that the allowance made did not take into consideration the wife’s share in the husband’s estate, to which he found she was entitled, or else the award was inadequate, as it was estimated that defendant’s business and property was worth over $500,000; and that, therefore, on this application the evidence should be reconsidered so that the court can increase, as well as decrease, such allowance.
The definition of 'alimony as embracing maintenance in the abstract, and as including a share or interest in the accumulation of the husband’s estate, as well as the scope and conclusiveness of the findings, has led counsel to the citation of many authorities .of other states, which the eoürt has examined, only to find, as it has on other occasions, that the footprints of research led back more profitably to the decisions in our own state. And the numerous decisions of our courts have not made entirely clear the legal phase of this controversy.
A cursory investigation would lead to the opinion that the remarriage of a divorced woman ipso facto terminated the obligation of her former husband to support her. Perhaps this is also the result of the repugnance felt towards the anomalous position of a wife being released at her own request of all obligations towards her former husband, and thereafter receiving assistance and support from him as well as from a possible second husband.
On the other haiid, the relinquishment of all obligatioiis on the part of the husband, sometimes of wealth (perhaps augmented through the efforts of the wife) to support a wife *596 divorced by his aggression, is a much more reprehensible situation, even though she marry again.
It is this shifting of the equities to fit the peculiar circumstances of.each case that has given rise to that contrariety of opinion and resulted in the passage of statutory • laws giving the courts wide discretionary powers to fix amounts and values and to impose reasonable conditions for the payment or suspension of alimony.
That alimony, in its strict sense, is merely an allowance to provide for the separate maintenance and support of the wife, to be paid by the husband, growing out of the relationship, and because of his obligation so to do, as contradistinguished from a division of the property of the husband, is conceded by the text-books in many cases. 14 Cyc., 742, 767; 2 Am. & Eng. Enc. Law, 92; 2 Bishop, Mar. & Div., Sec. 351; Bacon v. Bacon, 43 Wis., 197; White v. Bates, 89 Tenn., 570; Maxwell v. Sawyer, 90 Wis., 352; Olney v. Watts, 43 Ohio St., 499-508.
In Weidman v. Weidman, 57 Ohio St., 101, this distinction seems not to have been observed, for at page 104 the Supreme Court said:
“The property of the husband is usually the result of the joint efforts of both husband and wife, and upon dissolution of the marriage she is entitled to her equitable share of the property as alimony. * * * Her equitable interest in such property is so connected and interwoven with the marriage relation that it can be best ascertained and separated in the same action in which the marriage contract is severed by divorce.”
Judge Price, of the Supreme Court, in an interesting opinion in the case of DeWitt v. DeWitt, 67 Ohio St., 340, shows that the early view of, the law was, that the allowance of alimony was one derived, not from courts of equity, but from the ecclesiastical law and later from the common law of England, notwithstanding a few contrary expressions of some of the earlier cases in this state, which refer to the equity powers of courts of chancery in divorce cases, and that the better view is, that the subject is purely statutory, and that the courts of law derive their authority therefrom. On page 350 he says:
*597 “Having, we think, satisfactorily shown that the court in allowing alimony does not exercise general equity powers, but is controlled by the statute, and is authorized to exercise such power as that expressly gives, and such as is necessary to make effective its orders. and decrees thus made, * * * we turn to the statute to ascertain just what it does prescribe. Section 5699 provides * * * ‘She shall be allowed such alimony out of her husband’s real and personal property as the court deems reasonable, having due regard to the property which came to him by marriage, and the value of real and personal estate at the time of the divorce, which alimony may be allowed to her in real or personal property, or both, or by decreeing to her such sum of money payable either in gross or installments as the court deems just and equitable; and if the wife survives her husband, she shall also be entitled to her right of dower in the real estate of her husband not allowed to her as alimony, of which he was seized at any time during the coverture, and to which she did not relinquish the right of dower.’ It is to be noted that here are certain important mandatory provisions. ■ * * * She shall be allowed alimony out of her husband’s real and personal property, and, if she survives her husband, she shall be entitled to her right of dower in his real estate not allowed as alimony to which she has not released her right. While the court is granted much latitude as to the amount of alimony to be allowed, it may not disregard these mandatory provisions; and while, also, the court may make conditions respecting the time and manner of payment of the alimony allowed, it may not attach such conditions to the allowance as will nullify any of these positive requirements of the statute, or neutralize the allowance actually made. ’ ’
The Supreme Court reversed the circuit court’s order, in which it had awarded the wife alimony on condition that she quit-claim her interest in her own land and her dower in the husband’s lancl, on the ground that the statute did not per-, mit this to be done.
It is evident from the provisions of our statute and the decisions that our highest courts have regarded the division of the husband’s property as alimony. There seems, however, to be a distinction between the eonclusiveness of an order allowing alimony as maintenance out of the income of the husband’s estate, sometimes called a pension, and that of an order allow *598 ing a sum of money as a division of the property of the husband. Bevised Statute, 5699, apparently permits an allowance out of a husband’s property, either in gross or in installments. Therefore such a division might be made in monthly payments.
In King v. King, 37 Ohio St., 370, 372, it was held that—
“A decree for alimony is not affected by the subsequent marriage of the woman to whom it is granted, in the absence of a provision in the decree that it shall have such effect, although such marriage may, in some cases, afford sufficient grounds for reducing the amount.”
In Olney v. Watts, 43 Ohio St., 499, the third syllabus reads:
“Where alimony had been granted, in installments, to a divorced wife, and she is afterwards remarried to a man financially able to, and who does, in fact, support her, these facts would prima facie be a good cause for modifying the former decree so as to reduce the amount to be paid for her support to a nominal sum, or such sum as, in the changed condition of the defendant, the court will deem just and reasonable.”
On page 508 of the opinion it says:
“If, however, it shall, in the further progress of the case, appear that the .former decree, instead of being in the nature of alimony payable in installments for the support of the wife, was in the nature of a permanent division of the husband’s property, and that the parties fixed the same by their own agreement, and the action of the court in the premises was simply an affirmance of the agreement by consent, this, if alleged and proved, may furnish a complete defense.”
It is true that the agreement of the parties was an element in this adjudication. Although the line of distinction is not clearly drawn between the finality of the order dividing the husband’s property and the right to modify an order solely for maintenance, the fact that the decisions fixing permanent alimony out of the husband’s estate have been uniformly held to be decisive of all questions heard or which could have been heard and determined, seems to bear this out.
Petersine v. Thomas, 28 Ohio St., 596, was a confirmation by the court of' an agreed sum as alimony in gross. The opinion *599 is in the main an argument in favor of the finality of a decree granting alimony in gross. The opinion, on page 599, recites:
“The court may, however, in the exercise of a sound discretion, grant the divorce, and make the alimony allowed payable in installments, and by continuing the alimony branch of the case, hold the parties and subject-matter, by proper orders, so under its control, as to increase or diminish the allowance as equitable circumstances and justice shall require.”
In Weidman v. Weidman, supra, in which the court refused alimony in a separate action therefor, after a divorce had been granted in another proceeding, the court said, at page 104:
“And when both parties have their day in court in the divorce proceedings, and permit the marriage contract to be severed without at the , same time having their property rights growing out of said contract and relation, adjusted, it will be held that they have conclusively waived and withdrawn the' consideration of that question from the court, and neither of them can thereafter be heard in aid of an adjudication as to such property, or as to such property rights.”
True, this case covers both maintenance and a division of the husband’s property, for both of these could have been tried and determined in the action.
Law vs Law, 64 Ohio St., 369, involved a decree based on the agreement of the parties, allowing alimony in installments for maintenance of the wife and a child as long as the wife remained unmarried, and awarding the proceeds of a policy of insurance in' gross, in consideration of which she shmild have no interest in his real estate during his lifetime and after his death. This was held to be a final order not subject to modification by change of circumstances. The agreement of parties was an element. To what extent does not appear. It was said that the payments of the husband were made conclusive by the terms of the decree. The monthly installments were to continue without modification, except only in case of a remarriage.
Hassaurek v. Markbreit, 68 Ohio St., 544, is perhaps the last statement by our Supreme Court. The divorce having been granted to the husband, a monthly sum was paid to the wife *600 during her life, and this, by agreement, was carried in the decree. It was held that this was not subject to modification and created a valid obligation not only during the life of the husband, but after his death against his estate.
The necessity of presenting both claims, for maintenance as well as for a division of the husband’s estate, where both parties are in court, and in an action in which the same can be heard, seems to be established by these authorities.
A late decision of the Wisconsin Supreme Court, supporting the claim of plaintiff’s counsel, is that of Palica v. Palica, 114 Wis., 236.
There the statute provides that a decree making final distribution of the property rights of the parties was not subject to review. Athough such decree recited that it divested each party of all interest in the other’s real estate and made an annual allowance to the wife, it was held that this was not a final disposition of the property rights of the parties and that “the annual allowance was indicative of a contrary intent.
That allowance, specially in installments, may subsequently be reduced by the remarriage of the wife, whether particularly provided by the decree or not, seems also to be the law of Olney v. Watts, supra, and this has not been modified or overruled.
Applying the logic of these cases to the decision of the former trial judge asUieretofore rendered, and by virtue of the special proviso contained in the judgment entry, the right of Mrs. Madden to recover her interest in her husband’s estate because Of the marriage relation, or because of her assistance in accumulating his fortune, was finally determined in the action. This is indicated by the pleadings, the evidence and by the opinion of the learned judge. Even if it was not so determined, it could have been, and therefore that question is res judicata.
In the same category is the right to maintenance because she was the wife of the defendant. This right to maintenance could at least be modified in view of the doctrine of Olney v. Watts, supra, and of the condition in the decree which distinctly provides that, in the case of the death of Madden, or his wife’s remarriage, the same may be modified or terminated. And this *601 trial judge is of the opinion that, in view of the admission of Mrs. Madden’s counsel, that her present husband is now amply able to provide for her, the amount applicable to maintenance should cease altogethér, or, at least, a nominal sum of one dollar per year should be assessed against the husband, dependent upon future contingencies which might again justify an alteration. It does not, however, necessarily follow that, because the right of maintenance ceases, that much of the allowance which is applicable to her interest in the accumulation of her husband’s property should also cease and determine. If the plaintiff aided and assisted her husband in his business, as was affirmatively found by the court, she was of right entitled to some share or interest therein; and while this could be paid to her in installments, its future allowance, both in reason and in law, should not be affected by her subsequent marriage, for she was entitled to this share or interest for her' assistance and as the result of her past labors in the domestic partnership.
This is also born out in Nelson, Div. & Sep., Sec. 933, under the head of “Whether marriage of a divorced wife terminates ■her alimony”:'
“The solution of this question depends upon the theory of the allowance made by the court upon dissolving the marriage. If alimony is considered a sum in lieu of dower, a compensation and a payment in lieu of a division of property acquired by joint effort, or a decree for a sum brought to the husband at marriage, no subsequent conduct of the wife should release the husband, who has now become her judgment debtor. On the contrary, if the sum awarded is regarded as a kind of pension, an equivalent for the obligation created by marriage to support the wife, and which obligation is released by di-’ voree, then it would follow that when the divorced wife marries another, her second husband assumes the obligation of support, and the pension is terminated.”
One of two situations must, therefore, result: The award dividing the property is either final, or, under the flexible language of the statute, and the decree holding the parties and subject-matter under, the court’s control, is liable to modification. If subject to modification, it might be increased beyond the amount allowed by the former trial judge.
*602 It is my opinion, however,' that the division of the property was finally passed upon and that this court can not now increase the sum so fixed.
This conclusion requires us to separate the amount for maintenance from that of the wife’s share or interest in her husband’s estate. To that end, I find upon consultation with my associate that while both elements were considered and determined, no separate estimate of each was made.
This inquiry necessitated the reading of all the depositions and evidence in the case, covering almost one thousand pages. It is not essential that all the facts' be reviewed. They certainly confirm this court’s finding of aggression on the paid of the husband.
Mr. Madden became his own accuser and prosecutor when he chided himself for failing to give more of his time and attention to his family rather than to his business, and in permitting his wife to remain isolated on the Hamburg farm while he was away most of the time; especially in view of some of the unpleasant duties that were imposed upon her. He evidently has his good qualities, and unquestionably was 'devoted to his wife and children. He was never cruel in the sense of inflicting any physical punishment. He was, however, guilty of one grievous offense which seems not to have been greatly dwelt upon in the case, and yet it seems to the court as the one which ultimately drove the wife forever out of his life.
After Mrs. Madden had apparently resolved to separate from her husband she took the two children to a school in New Jersey. He secretly spirited them away to his stock farm in Kentucky. The mother, by mistake or design, was refused the right to talk, to them by telephone. Her letters to them were intercepted. When she visited at the Lexington hotel for the purpose of seeing them, she craved a desire to have them remain with her and watch over them during the night. He, fearful that she might take them away, instructed his attorneys to refuse this right, which belonged to her under the law, both human and divine. Her tears did not alter his determination. Deprived of the love and society of her children, John E. Madden lost the strongest leverage he had upon his wife and her affections.
*603 After this occurrence no amount of money would tempt her to return. She seems to have blotted out entirely her former domestic life and then determined to marry John E. Madden’s enemy. She was without question a true and loving wife and mother; not, however, without her own faults. She was remiss in not heeding her husband’s instructions regarding her choice of society and in so readily yielding her control over her children; as well as in so hastily marrying Louis V. Bell.
Many other incidents in their lives might be recited which would serve no useful purpose. Only such ultimate facts as bear upon the equitable division of the property should be considered.
The fact that he had undertaken the care, custody and education of the two children and that she relinquished her right to the same without resistance, are proper elements for consideration.
I am not inclined to attach too great importance to the keeping of the studbooks, the payment of the wages to the help on the farm and to the writing of the letters by Mrs. Madden. They must, of course, be considered. These services could have been attended to by another at not to exceed $15 a week. The value of this service would cease whenever the work ceased. On the other hand, Mrs. Madden was a faithful wife during the time that she was mistress on the farm, and reared her children properly; and this was her main duty in the success of the domestic partnership.
The value of his stock and farm ranges, according to the evidence, from $200,000 to $500,000. The reasonable value should be about $250,000. Some of this capital sum should be conserved and applied to the care and maintenance of the children. The maximum monthly allowance heretofore made being $250, it must necessarily be reduced by the elimination of the maintenance feature. As this $250 capitalized at 6 per cent, would represent only $50,000, it will be obvious that a material reduction could not be made without doing violence to the interests of the wife.
Taking into consideration all the facts and circumstances of the case, I am of the opinion that the monthly allowance should *604 be reduced to $150. This, capitalized at 6 per cent., would give her an interest of about $30,000. If we were to set aside one-half of the Madden fortune for the children and give her one-fourth of the remainder, it would approximately reach this same sum.
Charles W. Balter, for plaintiff.
Charles B. Wilby, Stanley .E. Bowdle and Willian Lindsay, for defendant.
This sum of $150 is, therefore, ordered to be paid monthly during the lifetime of Mrs. Madden, and should be in full of her share and interest and all her rights in the real and personal estate of John E. Madden, which he now has or may hereafter aecpiire, and as a division of all property interests between them.
The defendant is given the option to pay the principal sum instead of the monthly allowance for a release in full.
Decree accordingly.